Good morning, Your Honours. May it please the Court. I am Juan Rodriguez on behalf of Apprentice Jane Doe, K.D. and M.D. Could you speak up? I'm having trouble hearing you. I am Juan Rodriguez on behalf of Apprentice Jane Doe, K.D. and M.D. I'd like to reserve five minutes for rebuttal, if I may. Please watch the thought. Yes, Your Honour. Your Honours, this case arises from a principal's alleged threat to call immigration enforcement on Mother Jane Doe if she filed a complaint against him concerning a lunchtime pausing. Today, I will discuss why summary judgment must be reversed with respect to the First Amendment retaliation claim, equal protection, qualified immunity, and procedure and process. First, with respect to the First Amendment retaliation claim, the District Court should be reversed for two reasons. First, retaliatory threats need only be chilling to a person of ordinary firmness. They need not actually be carried out. Second, the alleged threat was intimidating by design. With respect to this first point, this Court has made clear that retaliatory threats may not actually be carried through for this claim because a retaliation claim may insert an injury that is no more tangible than a chilling effect on First Amendment rights. So in Arnuna's case, his supervisors threatened to transfer or dismiss him, but he held that was not enough to get adverse action. How is that case distinguishable from this one? This case involved an expressly retaliatory threat in a very sensitive environment, a school environment, and the nature of the threat itself carried heavy consequences. It raised the prospect of deportation and separation of family. But in Nunez, the threat was also retaliatory and threatened to have adverse employment action, but it wasn't acted upon. We said that wasn't enough. So why is this different? Again, an unacted upon threat? This Court subsequently, after Nunez, clarified and co-saw tourists to the City of Salem that Nunez simply stood for the proposition that minor acts that cannot reasonably be expected to deter speech were not enough, and that the reasonably likely to deter a person of ordinary firmness is the standard that should be applied. So co-salter was much more than an unacted threat, right? There was all sorts of retaliatory actions. Correct. So co-salter can characterize Nunez, but of course can't overrule it since it was just a three-judge panel, correct? No categorical rule that threats cannot support a First Amendment retaliation claim. They just need to be chilling, and in this case, the threat to call immigration enforcement was indeed chilling. What distinguishes this case, the threats in this case, from the threats in Nunez? Well, in this case, there was a threat to an immigrant mother that if she filed a complaint that involved a lunchtime policy that was concerning her daughter's health, he would call immigration enforcement. It raises the prospect of, as I mentioned, deportation and family separation. So it's a very grave threat, the threat to separate families, and that's much more adverse first, much more chilling than is an employment decision. So does that put us on some type of continuum where we have co-salter, Nunez, and now Doe, and we look at gradations of threats? Is there a bright-line rule that we can use? I would say that there actually is not a bright-line rule. Only the inquiry is whether we chill a person of ordinary firmness, and that reflects the reality that some threats can just not be chilling. They may be inconsequential. There can also be very serious threats. If there's not a bright-line rule, how do you address the government's argument that the principal was entitled to qualified immunity since a reasonable person could think that Nunez was controlling? We don't have a case exactly on point with an immigrant mother, et cetera, right? There's no case exactly on point, so under Supreme Court direction, it's not clearly established that a single and active threat in this context, as opposed to the Nunez context, violated her First Amendment rights. Plaintiffs have briefed that it's clearly established that immigration status inquiries within the education context interfere with educational opportunity rights. I do want to specifically note the case of Maria P. V. Riley, a California Supreme Court case in which the court ruled that school reports of children's immigration status to federal authorities interfered with Plyler's Guaranteed Abuse Court Decision. But there is no report here, right? There is no report of immigration status to federal authorities, or I think in the 11th Circuit case that you cite in your briefs, there was a question about a state statute requiring determination of all children's immigration status. So those cases are not directly on point, where here we have a single and active threat. Correct. So has that clearly established that what the principal was doing violated Doe's First Amendment rights? Although the principal didn't actually make a report to federal immigration authorities, under Maria P. V. Riley, he was threatening conduct that he should have known was unconstitutional, and focus is on whether a person of ordinary firmness would be chilled. So to threaten unconstitutional activity, the principal should have known that that was unconstitutional conduct. Well, he didn't, in fact, act upon it so far as we know, right? So far as we know, Your Honor, yes. So if he knew that he shouldn't have acted upon it, in fact, he didn't, right? Correct. Although Plaintiff's position is that the threat of unconstitutional activity itself isn't constitutional. What effect, if any, does the whole notion that you raise of a stigma place on this question of a person of ordinary firmness? You argued that the stigma of reporting someone to immigration officials would chill a person of ordinary firmness, if I understood your argument correctly. The argument concerning stigma related mostly to the Equal Protection Claim. In this case, the chilling effect of alleged immigration threat was more about the prospect of Jane Doe potentially being taken from her children and deported. This Court stated in Brodheim v. Cry with respect to this First Amendment retaliation claim that a power of the threat lies not in negative, any negative actions eventually taken, but in the apprehension it creates in the recipient. Therefore, Plaintiff's position is that contrary to the District Court's reasoning, that there was no evidence that the principal actually called immigration enforcement or that immigration enforcement did not actually show up at the school is in and of itself of no consequence. The focus is on whether the threat would chill a person of ordinary firmness. So Brodheim, if I'm remembering right, was a prison case, right? Correct. This is where the individual was in prison and it was a guard or a warden remark or a threat to him. So going back to the clearly established, how is that case not a distinguishable one from this one given the prison context? Well, in Brodheim v. Cry, that case involved a very general threat. It was a prison official's note on a prisoner's complaint form that he, be careful what you write, request on this form. There is no express punishment that's being threatened there, but the court found that there was an implicit threat there. And our case differ in that there was an express retaliatory threat. If you do this, if you proceed with your complaint, I will call immigration enforcement on you. Therefore, we see Brodheim v. Cry supporting our case. Is there a similar case where there was a single threat in a school situation? So this is a principal making a threat to a parent? I'm not aware of any, but there are cases that touch on how sensitive immigration status is within the elementary school context. And those are sufficient, you think, to satisfy the qualified immunity test? To put the principal on notice adequately that what he was doing was violative of those constitutional rights? When coupled with Maria P. Riley, those cases that hold that mere immigration status inquiries within the school context interfere with equal educational opportunity rights, we do think that a reasonable principal should have known that an express threat to contact immigration enforcement is unconstitutional. We would also like to note that with respect to qualified immunity, this court can reverse the district court's grant of qualified immunity for the sole reason that plaintiffs were denied notice and an opportunity to be heard on the issue, and the issue had at no point been briefed during the litigation. Do you want to save some time for rebuttal? I do. Thank you, Your Honor. Good morning. May it please the Court, Nancy Dumanian for Pasadena Unified School District, and Mr. Ruelas, thank you for the Court's time. Unless the Court has any questions, I would like to submit on the brief with one comment, if I may. The issue here is, was there any material factual disputes raised by the appellants before the district court? And the district court took a lot of time, effort, and detail in a 16-page ruling in which the court articulated the absence of tribal issues of material facts sufficient to defeat summary judgment. And in appellant's brief submitted to this Court, they don't raise any new or different information or cite to the record. I apologize if there's an echo. I'm so sorry. They don't raise any new or different information in the record that there were tribal issues of material fact to call into question the propriety of the district court's ultimate ruling. And unless Your Honors have any questions, I will submit and I thank you very much for your time. Can you address the remarks of opposing counsel that the qualified immunity issue had not been briefed before the district court? Well, the court has its discretion in conducting and assessing the propriety of summary judgment. What applicable law supports the granting or denial of the motion? And here, Judge Anderson went through a very detailed analysis. And in assessing the propriety of the 1983 claims presented, that triggered a discussion of qualified immunity. I don't think that would have made a difference to the outcome given the absence of tribal issues of fact. And the long and short of it, Your Honors, is that in the end of the day, one of the minors who was no longer a minor at that time wasn't even a student at the school. The other minor, there was no factual dispute that she was denied any access to educational opportunities. And you're viewing this case in the lens of a school setting. And number three, as to Plaintiff Jane Doe or Appellant Jane Doe, the evidence was undisputed that in these two school years at issue, she was at the school volunteering 39 different times, as confirmed by signature sheets showing that she signed in on each occasion that she appeared to volunteer at her child's school. Was it clear that every time she signed in, she was there for a volunteer activity, or was she required to sign in whenever she came to school? So she might have come to school for other than volunteer activities. Was that clear from the record? It was, Your Honor, because the plaintiff did not dispute the sign-in sheets, which reflected 39 signatures. And the evidence before the district court was that parent volunteers are to sign in. They also go through the volunteer process. And the evidence before the district court in the moving papers was that she had filled out the volunteer application, that she had been given a badge to volunteer, that she was recognized for her efforts in volunteering, that she was given an award for volunteering, and that if she showed up for a school event, like every other parent, she might not be required to sign in. But if you were there and signing in in that front office, you were there to volunteer, and that was not disputed by the appellants or plaintiff before the district court, Your Honor. And there is no dispute of fact on that issue in the record before this court, that she was there to volunteer on those occasions. And most telling is her child's testimony that corroborated that, yes, in fact, my mother volunteered at the school and was in my classroom quite frequently. I want to talk about qualified immunity. Clearly there isn't a case law that squarely addresses facts like this, which typically would suggest qualified immunity applies. On the other hand, what's troubling here is the allegations, is that the threat was, assuming the allegations are true, the threat was explicitly tied to complaining to the school board. There's no other situations with other cases. Usually there's some potential public policy rationale or an alternative explanation. We needed to maintain order in the prison. We needed to maintain discipline in school. Or even a supervisor needs to manage his or her employees. Here it seems like, based on the allegations, there's absolutely no public policy rationale or pedagogical purpose to the threat that the principal made. I mean, is that something that distinguishes this case from other cases for purposes of qualified immunity? I don't believe it does, Your Honor. Going back to Your Honor's observation about the adverse action, the undisputed evidence was that even after this threat was made, and for purposes of the motion it was assumed to be truthful that the threat was made, she did attend a board meeting. She attended several board meetings. Her daughters continued to attend the district. The younger daughter continued to attend Madison Elementary School. This is for First Amendment, so, I mean, this is, you know, the test there is would it reasonably chill someone of, you know, normal firmness. Correct. I'm sorry, Your Honor, could you repeat your question one more time? Sure. I want to make sure I understood it. Sure. The thing that's, again, troubling to me about the allegations here in this case is the threat here, the speech by the school principal, is there any bait? If you assume the allegations, it's explicitly tied to if you complain, I'm going to threaten to call ICE. In other cases, usually there's at least some other plausible explanation for that behavior or maybe a public policy rationale for the threat or the alleged threat. Here it seems it's so explicitly tied to you complain about me, I'm going to call ICE. Well, the evidence, Your Honor, was that it was a complaint about throwing away or wasting lunch food. It wasn't a complaint about the principal or his views on immigration or immigrants. But qualified immunity in that analysis requires a deprivation of a constitutional right. The right that the plaintiffs claimed here was that the right of the mother to volunteer in her child's classroom. Well, there are two, right? There's volunteer and then there was also the free speech. And you don't have to show that your speech was actually chilled under the law. If a reasonable person would be chilled, that's enough for a First Amendment retaliation. That may be in another case. But here the undisputed evidence was that the plaintiff mother attended four board meetings after this threat was made. The undisputed evidence was that she was never prevented from speaking out at any board meetings. You make any complaints at any subsequent meetings? And she made complaints at the subsequent meetings, which would refute the argument that there was some chilling of her constitutional rights to address the board. She did that without any limitation, without restriction. She was not thrown out of any board meetings. She was not told to stop speaking. You make any further complaints regarding the principal or the administration at the school? Because the question involved her being retaliated against for complaining about the principal's response to her request that they not throw away the food at whatever time they threw away the food because her daughter suffered from anemia. And so going back to Judge Lee's question, how do we know that her speech was not chilled as a result of being threatened to basically be deported? Well, you're looking at what is in the record. The evidence in the record is that she attended several board meetings after this threat was made, that she testified at deposition that she was never prevented from attending any board meetings. That's not the test. The test is whether his reaction would chill a person of ordinary firmness. And if you can't answer that, then would the remedy be to send it back to the district court to develop the record to determine whether there are any genuine issues of material fact as to whether the threat accomplished its purpose? Well, but that argument can't be made in a generic sense, Your Honor. The argument has to be tailored to the facts of this case. I agree. I'm not asking you to make it in a generic sense. I'm asking you to make it in the context of these facts. So what evidence do we have that her speech was not chilled? The plaintiff contends that her speech was chilled because she couldn't volunteer at her child's school. That was the allegation in the complaint. And this court is well aware that allegations of the complaint aren't enough to oppose a summary judgment. And when those allegations were fine-tuned in the civil discovery process, she testified that she doesn't recall volunteering at the school, sign-in sheets that she was shown confirmed she signed in. And so the chilling of rights here, Your Honor, and to answer Judge Lee's question as well, was her claim, was one claim, I couldn't volunteer at my kid's school, and then it was altered a little bit to say I couldn't volunteer as much as I would have liked or in the programs I would have liked, not as much as I would have liked, but in the programs I would have liked. And the district court correctly went through an analysis to say that, well, if you were there 39 times in those two school years, and we're talking eight months of the year, you were there 39 times, you got to volunteer and participate in activities, and that wasn't disputed. She didn't dispute it was her signature, Your Honor. She didn't dispute that she wasn't at the school. It was, well, I was doing a different program than this program. In the end, it's volunteering, and there wasn't a material, factual dispute on whether there was any chilling of her rights here. And the only chilling of rights, Your Honor, was not attending our schools or access to educationally-related activities at our district. It was simply this issue of volunteering, and the evidence that was undisputed for purposes of the summary judgment was that she didn't raise the dispute of fact that her rights were chilled as evidenced by the most significant evidence in support of that claim is 39 signatures to show that 39 times she was volunteering at her school, and that was never disputed by the appellant, either in the lower court or before this court, Your Honor. I hope that answers your question, but the deprivation of rights, Your Honor, was not my kids are afraid, people are afraid, and there is no dispute, Your Honors, that in the political climate of that time, everybody was afraid, or immigration was a very, very hot issue. So students in our district generally being fearful of immigration and deportation, we signed a board resolution at that time to be supportive of immigrant families, but that has nothing to do with this summary judgment and whether there were any material, factual disputes. And again, the only chilling of rights, the allegation was volunteering in the classroom, and there was no factual dispute that, in fact, Jane Doe was there not once, not twice, but 39 times. And I get it. I'm a mother. I've got three kids. There's a big value to volunteering in children's schools, as the district court noted, but she did that here. There was no chilling of any rights when you look at it to the facts of this case and in the circumstances in which the threat was made and her subsequent actions of attending board meetings, her kids attending the schools, her kids not being denied any educational activities, her not being denied any opportunities. There simply was no factual disputes on those issues, Your Honor. There's no need to remand it. Summary judgment should be affirmed. But I hope I've answered your question, Your Honor, and, Judge Leah, I hope I've answered your question adequately. Thank you. If there's any other questions, I still have time remaining. I'm happy to answer any other questions. Apparently not. Thank you very much for your time. Thank you and your consideration. Thank you. You have some time for rebuttal. Thank you, Your Honors. I will address a few points that were made. First, with respect to First Amendment retaliation, the law is clear that defendant cannot escape liability merely because an unusually determined plaintiff is not actually chill. Opposing counsel is suggesting that Doe's only allegation of the chilling effect was on her volunteering as opposed to her speech. Is that correct? That is not correct. She testified that she decreased her participation in family engagement events at the school to decrease the likelihood that there would be follow-through with the threat. So there was some chilling effect there. She decreased her participation in what, did you say? In school events. So as distinct from volunteering? Yes, Your Honor. Her participation in school events? Correct. Okay. And is that in the complaint or it's in her opposition to summary judgment? That is in her affidavit. And let's see. It's around Excerpt of Record, page 118. It may be off by a page. I apologize. Okay. And I would like to address what defendants have belabored to and claim to have been an undisputed fact that Jane Doe volunteered 30 times within the school year. The basis on volunteer sign-in sheets that are for any visitors. Indeed, the defendant principal testified that those visitor sign-in sheets were for any visitors to the school, including volunteers. Did she produce any evidence indicating that she came there during the 15th, 16th school year for purposes other than volunteering? Jane Doe had a daughter who was anemic. And because of the lunchtime policy during the school year, she would take her child out so she couldn't feed her outside of the school. That would have been reflected in the 39 times opposing counsel spoke about? We don't know whether it was the entire 30 times, but a substantial portion of them. Is there anything in the record that shows how often she volunteered the previous year, 24, 2015? No, Your Honor. But I would like to add that Jane Doe testified that she did volunteer in this distinct program as distinct from the school's regular volunteer program. This separate volunteer program was like a kindergarten program with its own separate entrance, not the front entrance through which people sign in. And it was fenced off the remainder of the school. With respect to qualified immediate digits, I want to make one point that I do not have the key citations in front of me, but courts, when they have been confronted with raising an issue sui sponte for which the parties have not briefed the issue, they issue an order even after briefing, requesting briefing on an issue. And that's what this court should have done in this case. I have only a few seconds. If the honors have any more questions. Apparently not. Thank you. All right. In the case of Jane Doe, the Pasadena Unified School District is submitted and we're adjourned for this session.
judges: Ikuta, Marbley, Lee